**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD ANGINO and ALICE** | : | |
| **ANGINO,** | : | **CIVIL NO. 1:15-CV-418** |
| | : | |
| **Plaintiffs,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **WELLS FARGO BANK, N.A., and** | : | |
| **WELLS FARGO HOME MORTGAGE,** | : | |
| | : | |
| **Defendant.** | : | |

**REPORT AND RECOMMENDATION**

## I.    Statement of Facts and of the Case

This lawsuit, which comes before us for consideration of a motion to dismiss,  is one of several cases[1] brought by the plaintiffs against various financial institutions arising out of a common core of operative facts.  The plaintiffs in this action are Richard Angino, a local attorney, and his spouse, Alice Angino.  (Doc. 1, ¶4.)  The plaintiffs are in their 70s and as Mr. Angino approaches the conclusion of his professional career he and his wife have experienced a series of financial reversals.  As described by the Anginos in the well-pleaded facts set forth in their

---

[1]See Angino v. Santander Bank, Civ No. 1:15-CV-438; Angino v. Santander Bank, Civ. No. 1:15-CV- 1145.

complaint, these financial setbacks are in large measure a product of some

$13,000,000 in loans and mortgage indebtedness which they agreed to undertake in

connection with various residential and commercial projects over a number of years

up through 2002.  (Id., ¶6.)

This indebtedness included a mortgage on a luxurious residential property.

(Id., ¶7.)  In 2002, the Anginos had an existing mortgage in the amount of

$708,000 on this property with First Union Bank, a financial institution which later

became the defendant, Wells Fargo.  (Id., ¶8.)  According to the Anginos, in 2002,

they renegotiated "once in a lifetime" terms for a new mortgage loan from the bank.

(Id., ¶10.)  This new mortgage was based upon an appraised value for the home of

$2,310,000, and was a 100% cash mortgage, with interest only payments for the

first 10 years of the loan.  (Id., ¶¶8-18.)

The Anginos agreed to these new loan terms, and used the nearly $2.3

million dollars disbursed to them for an array of purposes.  (Id., ¶13.)  However, in

the decade which followed a confluence of events impaired the ability of the

Anginos to make the principal payments which they had agreed to in 2002 when

they refinanced this loan. These events included the economic downturn in 2007-

2009, which led to significant stock losses for the Anginos in their margined stock

holdings; (Id., ¶22) as well as severe financial reversals in various speculative

commercial and residential real estate investments.  (Id., ¶23.)  In addition, by 2013, Richard Angino's legal practice was also experiencing financial difficulties "because of having insufficient cases for eight attorneys."  (Id., ¶27.)

Confronted with this cascading array of financial difficulties, the Anginos were unable to make full loan payments in 2013, when principal payments began to come due under the terms of the 2002 loan agreement.  (Id., ¶28.)  These loan defaults compounded over time.  (Id., ¶¶28, 31, 32, 34, 41, 42.)  Thus, the Anginos' complaint describes in some detail the plaintiffs' breach of their 2002 agreement to make timely loan payments.  However, notably, with respect to the original 2002 loan agreement, the Anginos' current complaint does not describe any actions by the bank which violated the terms of this agreement.  Instead, the Anginos seem to allege that the bank is liable to them, in part, because the bank refused to further modify these loan terms in a fashion that would have been more favorable to these defaulting borrowers, something the Anginos represent they anticipated would occur in the future.  Thus, the apparent premise of this complaint is that the plaintiffs have some right to compel the bank to modify agreed-upon loan terms to its detriment and to the benefit of these defaulting borrowers.  Significantly, nothing in the 2002 written loan agreement reflected a promise of commitment by any of the parties to refinance this loan at some time in the future.

As the Anginos' 2002 loan  fell deeper into default, the Anginos began a series of lengthy, protracted, and arduous exchanges with Wells Fargo, seeking relief under the Home Affordable Modification Program, (HAMP), or any other mortgage relief the bank could offer.  (Id., ¶¶43-78.)  While the Anginos provide a detailed narrative of these communications, and characterize the discussions as an agreement to refinance their loan, what is noteworthy about the well-pleaded facts in the complaint is that they *do not* seem to reflect an agreement by Wells Fargo to refinance this $2.3 million loan.  At most, these communications describe a process–albeit a frustrating process from the plaintiffs' perspective–by which the Anginos could provide information to the bank so it could determine whether to enter into a modified loan agreement.  Ultimately, these efforts were entirely unavailing, since the Anginos' did not qualify for HAMP program mortgage relief.  (Id., ¶54.)

Based upon these averments, and in the face of these loan defaults, the Anginos have filed an eight-count civil complaint, which combines and conflates various claims and causes of action.  In Count I the Anginos allege that Wells Fargo breached its 2002 loan agreement with the Anginos.  This breach of contract claim, however, does not rest upon any breach of the actual terms of this written loan agreement. Rather, it seems premised upon "expectations of the parties that refinancing would be available."  (Id., ¶81)  Thus, the breach of this 2002 contract

–4–

alleged by the Anginos in fact entails a failure to enter into some new, different and more favorable loan agreement ten years later in 2012 when the Anginos began defaulting on this initial agreement.  In Count II of their complaint, the Anginos allege a second breach of contract claim, an alleged breach of a series of "HAMP TPP Agreements" between the plaintiffs and the bank in 2012 through 2014.  (Id., ¶90.)  However, the well-pleaded facts in the complaint describe something that appears to fall well short of an agreement to refinance.  Rather, the well-pleaded facts reflect discussions regarding a process by which the Anginos could provide information to the bank so it could determine whether to enter into a modified loan agreement.

Count III of the complaint, in turn, alleged that the bank engaged in unfair and deceptive practices under Pennsylvania's Unfair Trade Practices and Consumer Protection law, 73 Pa.C.S. §201-1, when it refused to further modify this loan. This unfair trade practice claim, as pleaded, seems expressly premised upon the Anginos' claims that they had some free-standing right to a loan modification under HAMP or due to the Dodd-Frank Wall Street Reform and Consumer Protection Act, a premise which is a recurring theme throughout this complaint. (Id., ¶¶100-109.)  Count IV of the complaint advances a promissory estoppel claim, which is once again based upon two notions which appear unsupported by either the law or the well-pleaded facts:  the idea that Wells Fargo agreed to refinance this

loan, coupled with the legal premise that the Anginos had an enforceable right to refinance this loan under HAMP or some other federal statute. (Id., ¶¶110-113.)

In Count V of the complaint, the Anginos endeavor to bring claims charging alleged violations of the Real Estate Settlement Procedures Act, ("RESPA"), 12 U.S.C. §2605, *et seq.* Specifically, the Anginos seem to allege that the defendants failed to respond to the plaintiff's "Qualified Written Requests" for information their loan and failed to correct erroneous loan information. (Id., ¶¶114-130.) Count VI of the complaint, in turn, alleged violations of the federal Fair Credit Reporting Act, by the bank. These alleged Fair Credit Report Act violations appear to have pertained to the bank's factually accurate reports that the Anginos had defaulted on their loan, but are flawed. (Id., ¶¶132-137.) Finally, Count VII of the complaint accuses the bank in a summary fashion of fraud, deceit, conspiracy, negligence and the intentional or negligent infliction of emotional distress. (Id.,¶¶137-143.)

Presented with this multi-faceted complaint, Wells Fargo Bank has now moved to dismiss the complaint citing numerous legal deficiencies in this pleading. (Docs. 6 and 12.) The Anginos, in turn, have responded to this motion to dismiss, albeit frequently in a summary fashion, often arguing the viability of many of these legal claims through a single summary, assertion. (Doc. 15.) Wells Fargo's motion to dismiss is fully briefed and, therefore, is now ripe for resolution.

While we note that some of the plaintiffs' claims seem to have transmogrified factually in the course of this litigation, when we consider the allegations actually made by the plaintiffs in their complaint, we find that many of these allegations do not state a claim upon which relief may be granted. Therefore, we recommend dismissal of Counts I, II, III, IV, VI, and VII of the complaint, although some counts, and particularly Count III which alleges a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-1 should be dismissed without prejudice to the filing of a n amended complaint stating well-pleaded facts in support of this claim. As for Count V of the complaint, which bring claims charging alleged violations of the Real Estate Settlement Procedures Act, ("RESPA"), 12 U.S.C. §2605, *et seq.,* it is recommended that the motion to dismiss be denied, but that the plaintiffs be directed to file a more definite statement of their claims pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

## II.    Discussion

### A.    Rule 12(b)(6)– The Legal Standard

Wells Fargo has filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R.

Civ. P. 12(b)(6).  With respect to this benchmark standard for legal sufficiency of a

complaint, the United States Court of Appeals for the Third Circuit has recently

aptly noted the evolving standards governing pleading practice in federal court,

stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years.  Beginning with the Supreme Court's opinion in <u>Bell
> Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (12007) continuing with our
> opinion in <u>Phillips</u> [v. County of Allegheny, 515 F.3d 224, 230 (3d
> Cir. 2008)] and culminating recently with the Supreme Court's
> decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading
> standards have seemingly shifted from simple notice pleading to a
> more heightened form of pleading, requiring a plaintiff to plead more
> than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief

may be granted, the court must accept as true all allegations in the complaint and

all reasonable inferences that can be drawn from the complaint are to be construed

in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien &
Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not

credit a complaint's bald assertions or legal conclusions when deciding a motion to

dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

Additionally a court need not "assume that a ... plaintiff can prove facts that the ...

plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State
Council of Carpenters</u>, 459 U.S. 519, 526 (1983).  As the Supreme Court held in

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid

cause of action a plaintiff must provide some factual grounds for relief which

"requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of actions will not do." Id. at 555. "Factual allegations must

be enough to raise a right to relief above the speculative level." Id. As the

Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in

order to state a valid cause of action a plaintiff must provide some factual grounds

for relief which "requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of actions will not do." Id. at 555. "Factual

allegations must be enough to raise a right to relief above the speculative level."

Id.

In keeping with the principles of Twombly, the Supreme Court has

underscored that a trial court must assess whether a complaint states facts upon

which relief can be granted when ruling on a motion to dismiss. In Ashcroft v.

Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a

motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in

conducting a review of the adequacy of complaint, the Supreme Court has advised

trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal  conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to  show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed:  "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal.  The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.'  Twombly, 550

-10-

U.S. at 570, 127 S.Ct. 1955.  A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955).  This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id.  A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In  practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record.  Sands v. McCormick, 502 F.3d

263, 268 (3d Cir. 2007).  The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents."  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered."  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.")  However, the court may not rely on other parts of the record in determining a motion to dismiss.  Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

>
> **B.**    **As Currently Pleaded Many Counts Set Forth in This Complaint Fail to State a Claim Upon Which Relief May Be Granted**
>
> **1.**    **The Plaintiffs Have Not Alleged Viable Breach of Contract Claims**

At the outset, in Counts I and II of their complaint the plaintiffs allege that Wells Fargo has breached two contracts with the Anginos–the original 2002 loan agreement between the parties, and some form of 2012-2014 HAMP-TPP loan modification agreement that the plaintiffs allege existed between the parties.  As a federal court exercising diversity jurisdiction in this case, we are obliged to apply the substantive law of Pennsylvania to this dispute.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d. Cir. 2000).  The legal principles governing the interpretation of contracts under Pennsylvania law is familiar and well-settled.  To prevail on a claim for breach of contract under Pennsylvania law, a plaintiff must plead the following elements:  (1) the existence of a contract, including its essential terms; (2) defendant's breach of duty imposed by the terms; and (3) actual loss or injury as a direct result of the breach.  See Diodato v. Wells Fargo Ins. Servs., USA, 44 F. Supp. 3d 541, 556 (M.D. Pa. 2014). Furthermore, the legal benchmarks applied to contract interpretation are also clearly settled.  Initially, "[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone." Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1010 (3d Cir. 1980) (citation omitted); Mace v. Atl. Ref. & Mktg. Corp., 785 A.2d 491, 496 (Pa. 2001). A contract is ambiguous only if it is reasonably susceptible to different constructions and capable of being understood in more than one sense.  St. Paul

Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 (3d Cir. 1991).   Under

Pennsylvania law, ambiguous contracts are interpreted by the trier of fact, and

unambiguous contracts are interpreted by the court as a matter of law.   Mellon

Bank, 619 F.2d at 1011 n.10.

The United States Court of Appeals for the Third Circuit has aptly

summarized Pennsylvania law regarding the interpretation of contractual language

and terms:

> The fundamental rule in interpreting the meaning of a contract is to
> ascertain and give effect to the intent of the contracting parties.  The
> intent of the parties to a written agreement is to be regarded as being
> embodied in the writing itself.  The whole instrument must be taken
> together in arriving at contractual intent.  Courts do not assume that a
> contract's language was chosen carelessly, nor do they assume that the
> parties were ignorant of the meaning of the language they employed.
> When a writing is clear and unequivocal, its meaning must be
> determined by its contents alone.  Only where a contract's language is
> ambiguous may extrinsic or parol evidence be considered to determine
> the intent of the parties.  A contract contains an ambiguity if it is
> reasonably susceptible of different constructions and capable of being
> understood in more than one sense.  This question, however, is not
> resolved in a vacuum.  Instead, contractual terms are ambiguous if
> they are subject to more than one reasonable interpretation when
> applied to a particular set of facts.  In the absence of an ambiguity, the
> plain meaning of the agreement will be enforced.  The meaning of an
> unambiguous written instrument presents a question of law for
> resolution by the court.

Great Am. Ins. Co. v. Norwin Sch. Dist., 544 F.3d 229, 243 (3d Cir. 2008) (internal

citation omitted) (citing <u>Murphy v. Duquesne Univ.</u>, 777 A.2d 418, 429-30 (Pa. 2001)).  Furthermore, courts must, whenever possible, read contract provisions so as to avoid ambiguity.  <u>Id.</u> at 247.  Where a contract is not ambiguous, but is instead subject to only one reasonable interpretation, it is appropriate for a district court to resolve the issue of interpretation as a matter of law.  <u>See</u> <u>Norfolk S. Ry. v. Reading Blue Mountain & N. Ry.</u>, 346 F. Supp. 2d 720, 725 (M.D. Pa. 2004).

Applying these legal benchmarks, we find that the Anginos' breach of contract claims, as currently pleaded, fail as a matter of law on several scores. Indeed, there is an intellectually elusive quality to these breach of contract claims which stems from a single source:  In no instances do the well-pleaded facts in the complaint identify a legally enforceable promise by Wells Fargo, the *sine qua non* of a contract claim.

For example, with respect to Count I of the complaint, the plaintiffs' claim that the 2002 loan agreement has been breached, the plaintiffs point to no breach of the actual terms of this agreement.  Rather, this claim is premised upon the plaintiffs' unilateral assertions concerning "expectations of the parties that refinancing would be available."  (<u>Id.</u>, ¶81.)  Suffice it to say, that no such promise to refinance can be found within the four-corners of the 2002 contract, a fully integrated written agreement. (Doc. 1-2.)  We have carefully reviewed this

agreement, which is attached as an exhibit to the complaint, and find this agreement to be clear and unambiguous. Further, nothing in the plain language of the agreement gives the plaintiffs a contractual right to refinance. Therefore, "[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone," Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1010 (3d Cir. 1980) (citation omitted); Mace v. Atl. Ref. & Mktg. Corp., 785 A.2d 491, 496 (Pa. 2001), and the plaintiffs may rely upon their own unilateral wishes to add unwritten terms to this otherwise unambiguous written contract.

Likewise, Count II of the complaint alleges a breach of what the plaintiff characterize as a loan modification agreement, but the well-pleaded facts recited in the complaint disclose that Wells Fargo simply sought information from the plaintiffs in order to ascertain whether it would agree to a loan modification. Courts consistently agree that such requests fall well short of an enforceable loan modification agreement and have declined to sustain a breach of contract claim based upon mere requests for information like those made here.[2]

---

[2] See, e.g. Eckerle v. Deutsche Bank Nat' 1 Trust, 580 F App'x. 526, 528 (9th Cir. 2014); Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 92 (1st Cir. 2014); Bloch v. Wells Fargo Home Mortgage, 755 F.3d 886,889 (11th Cir. 2014); Scott v. Wells Fargo Bank, N.A., No.1 0-3368 (MJD/SER), 2011 WL 3837077, at *9 (D. Minn. Aug. 29, 2011); Dersch v. BAC Home Loan Servicing LP, No. 1:11-

The Anginos' prospects on these particular contract claims do not improve if the claims are cast as a claim for a breach of a duty of good faith.  As a general rule allegations of a breach of the covenant of good faith sound in contract, rather than tort. See Creeger Brick & Bldg. Supply, Inc . v. Mid–State Bank & Trust Co., 560 A.2d 151, 153 (Pa.Super.Ct.1989) ("Where a duty of good faith arises, it arises under the law of contracts, not under the law of torts.").  As a result, courts have found that the breach of the covenant of good faith is subsumed in a claim for breach of contract.  See McHale v. NuEnergy Group, No. Civ. A. 01–4111, 2002 WL 321797, *8 (E.D.Pa. Feb. 27, 2002) (concluding that Pennsylvania law would not recognize a claim for breach of the covenant of good faith and fair dealing as a separate cause of action apart from the breach of contract claim, since the actions forming the basis of the breach of contract claim were essentially the same as those brought in support of the bad faith claim); see also  JHE, Inc. v. Se. Pa. Transp. Auth., 2002 WL 1018941, *7 (Pa.Com.Pl. May 17, 2002) ("[A] breach of the covenant of good faith is nothing more than a breach of contract claim and ... separate causes of action cannot be maintained for each, even in the alternative."); Commonwealth v. BASF Corp., No. 3127, 2001 WL 1807788, *12 (Pa.Com.Pl. Mar. 15, 2001) ("Pennsylvania law does not allow for a separate cause of action for

CV-267, 2011 WL 3100561, at *8 (W.D. Mich. July 25, 2011).

breach of either an express or implied duty of good faith, absent a breach of the

underlying contract.").  Rather, under Pennsylvania law, such a duty of fair dealing

is entirely dependent upon the existence of a contractual relationship.  In short,

Pennsylvania law grafts onto all contracts a responsibility by the contracting parties

to deal fairly with one another.  However, Pennsylvania law does not recognize an

independent, and free-standing, duty of fair dealing outside a contractual context.

As we have previously explained:

> Whether express or implied, the covenant of good faith and fair
> dealing acts as a term of the contract, and that covenant arises from the
> contract itself.  See Ash v. Cont'l Ins. Co., 593 Pa. 523, 932 A.2d 877,
> 884 (2007); Birth Center, 787 A.2d at 385; Murphy, 777 A.2d at 434
> & n. 11; Gray, 223 A.2d at 11 ("We believe that this recent case law,
> employing contractual terms for the obligation of the insurer to
> represent in good faith the rights of the insured, indicates that a breach
> of such an obligation constitutes a breach of the insurance contract for
> which an action in assumpsit will lie."); Cowden v. Aetna Cas. & Sur.
> Co., 389 Pa. 459, 134 A.2d 223, 229 (1957).

> Because the covenant of good faith and fair dealing arises from the
> contract and not due to the mere relationship of the parties-as, for
> example, a fiduciary duty-a breach of the covenant sounds in contract,
> not tort.  See Ash, 932 A.2d at 884.  There is, however, no
> independent cause of action for a breach of the covenant of good faith
> and fair dealing-arising in contract-in Pennsylvania because such a
> breach is merely a breach of contract.  See Birth Center, 787 A.2d at
> 385-86; Gray, 223 A.2d at 11.  It has been said that a breach of the
> implied covenant of good faith and fair dealing merges with a breach
> of contract claim.  See Meyer v. Cuna Mut. Group, No. 03-CV-602,
> 2007 WL 2907276, at *14-15 (W.D.Pa. Sept. 28) (citing cases).

Zaloga v. Provident Life and Acc. Ins. Co. of America, 671 F.Supp.2d 623, 630-31 (M.D.Pa. 2009).

Since there typically is no separate cause of action under Pennsylvania law for breach of the duties of good faith and fair dealing; Chanel, Inc. v. Jupiter Group, Inc., Civ. No. 3:04-CV-1540, 2006 U.S. Dist. LEXIS 43363, at *6 (M.D. Pa. June 27, 2006); In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 549 (D.N.J. 2004); Blue Mt. Mushroom Co. v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 400-01 (E.D. Pa. 2002); LSI Title Agency, Inc. v. Eval. Servs., Inc., 951 A.2d 384, 391 (Pa. Super. Ct. 2008), a claim for breach of the duties of good faith and fair dealing is, at bottom, simply a claim for breach of the underlying contract. Zaloga v. Provident Life and Acc. Ins. Co. of America, 671 F.Supp.2d 623, 630-631 (M.D.Pa. 2009). Yet, in this case the Anginos seem to be alleging a breach of the duty of good faith claim, without asserting a clearly articulated breach of the underlying contract between themselves and Wells Fargo. This is a fatal flaw and defeats this claim as it is currently pleaded.

In any event, to the extent that some duty of good faith arises in a contractual setting, it is also clear that the scope of that duty in a borrower-lender transaction is narrowly defined and does not entail some legal obligation on the part of the lender to unilaterally agree to undermine, modify or defeat its own legal rights and

interests under a commercial agreement.  Thus, "the Supreme Court of

Pennsylvania has refused to impose a duty of good faith which would modify or

defeat the legal rights of a creditor.  Heights v. Citizens National Bank, 463 Pa. 48,

342 A.2d 738 (1975)."  Creeger Brick & Bldg. Supply Inc. v. Mid State Bank &

Trust Co., 385 Pa. Super. 30, 36, 560 A.2d 151, 154 (1989).  Likewise:

> It seems reasonably clear from the decided cases that a lending
> institution does not violate a separate duty of good faith by adhering to
> its agreement with the borrower or by enforcing its legal and
> contractual rights as a creditor.  The duty of good faith imposed upon
> contracting parties does not compel a lender to surrender rights which
> it has been given by statute or by the terms of its contract.  Similarly, it
> cannot be said that a lender has violated a duty of good faith merely
> because it has negotiated terms of a loan which are favorable to itself.
> As such, a lender generally is not liable for harm caused to a borrower
> by refusing to advance additional funds, release collateral, or assist in
> obtaining additional loans from third persons.

Creeger Brick & Bldg. Supply Inc. v. Mid State Bank & Trust Co., 385 Pa.

Super. 30, 36-37, 560 A.2d 151, 154 (1989).  In short, to the extent that

Pennsylvania law recognizes a contractual duty of good faith, "courts have ...

refused to apply a duty of good faith to alter or defeat the rights of a creditor which

have been granted by law *or contract.*"  Stewart v. SWEPI, LP, 918 F. Supp. 2d

333, 342 (M.D. Pa. 2013)(emphasis in original).

Fairly construed, the plaintiffs' complaint invites us to do precisely what

Pennsylvania law says we cannot do through the rubric of a duty of good faith and

fair dealing; that is, require a creditor to alter, defeat, modify, or renounce some

contractual rights which it possesses.  The all-encompassing duty of good faith

asserted by the Anginos in this complaint would also call upon us condemn Wells

Fargo for taking actions which the courts have expressly stated it is permitted to

take such as "adhering to its agreement with the borrower . . . by enforcing its legal

and contractual rights as a creditor;" refusing "to surrender rights which it has been

given by statute or by the terms of its contract;" or "negotiat[ing] terms of a loan

which are favorable to itself." Creeger Brick & Bldg. Supply Inc. v. Mid State

Bank & Trust Co., 385 Pa. Super. 30, 36-37, 560 A.2d 151, 154 (1989).  Since

Pennsylvania case law specifically rejects the notion that a lender must surrender

its legal rights in order to demonstrate its good faith to its borrower, the Anginos'

good faith claim, which is unmoored to any contractual breach by defendants and

demands that defendants forego their contractual rights, fails as a matter of law and

should be dismissed.

Similarly, the Anginos cannot bolster this breach of contract claim, as they

attempt to do in their response to this motion to dismiss by cataloguing a series of

doctrines, claims and affirmative defenses such as:  Reasonable Expectations,

Ambiguity, Waiver and Estoppel, Mutual Mistake of Fact, and Breach of Good

Faith. As the Pennsylvania courts have previously informed the Anginos, these

types of affirmative defenses under Pennsylvania law do not constitute an

independent, free-standing legal claim.  <u>Angino & Rovner, PC v. Santander Bank,</u>

<u>N.A.,</u> No. 489 MDA 2014, 2015 WL 6405714, at *7 (Pa. Super. Ct. Jan. 28, 2015).

Indeed, the Pennsylvania courts have already specifically rejected the application

of the reasonable expectations, waiver and estoppel, impracticability and

impossibility doctrines to similar claims leveled by the Anginos against another

bank in state court litigation.  <u>Id</u>.  Thus, the Pennsylvania courts have already

advised the plaintiffs that they may not transmogrify these breach of contract

defenses into  quasi-contractual affirmative claims.

More fundamentally, even construed as affirmative defenses to contract

liability, these defenses are typically limited to instances of physical impossibility,

and not mere fiscal impracticability.  Thus:  "[I]f the allegedly unforeseeable event

was in reality a natural and fairly predictable risk arising in the normal course of

business, then a court may not dissolve a[n] agreement . . . .  An individual's

financial position, for example, cannot generally be an implied 'basic assumption'

of a contract, nor will it excuse a party's performance.  <u>See</u> Restatement (Second)

of Contracts § 261 (1981) Comment: b. Basic assumption. Illustration 2 (showing

that contracting party's financial situation as result of bank failure does not excuse

performance on contract)."  <u>Step Plan Servs., Inc. v. Koresko</u>, 12 A.3d 401, 412-13

(Pa. Super. Ct. 2010).  In this case, the Anginos attempt to assert that the change in their fiscal position gives them some form of affirmative breach of contract claim against their lender.  This is something they may not do under Pennsylvania law. Therefore, this claim would fail as pleaded by the Anginos, and should be dismissed.  If the plaintiffs wish to try to further articulate these claims of estoppel and waiver, they should do so through the filing of a timely amended complaint, but they may not endeavor to transform their claims through their response to this motion to dismiss.

Finally, the breach of contract claims in the plaintiffs' complaint allude to the Home Affordable Modification Program (HAMP), a federal program designed to assist some banks and borrowers, and the Dodd-Frank financial reform laws, and may be read to allege some type of private right of action on behalf of the plaintiffs against the bank under these federal statutes.  To the extent that the Anginos incorporate these matters into their breach of contract claims, these assertions merit only brief consideration by this Court.  First, it is undisputed that "HAMP does not provide a private right of action.  See Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 559 n. 4 (7th Cir.2012) (noting that 'HAMP does not create a private federal right of action for borrowers against servicers')."  Sinclair v. Citi Mortgage, Inc., 519 F. App'x 737, 739 (3d Cir.) cert. denied sub nom. Sinclair v. Citi Mortgage,

<u>Inc</u>, 134 S. Ct. 245, 187 L. Ed. 2d 182 (2013) <u>reh'g denied sub nom. Sinclair v. Citi</u>

<u>Mortgage, Inc.</u>, 134 S. Ct. 1054, 188 L. Ed. 2d 140 (2014).  "Quite the contrary,

'federal courts across the country have held that HAMP does not create a private

right of action for borrowers.' " <u>Taylor v. Sovereign/Santander Bank</u>, No. 1:15-

CV-123, 2015 WL 757543, at *5 (M.D. Pa. Feb. 23, 2015)(collecting cases).

Therefore, it is well-settled that the Anginos may not premise a private right of

action upon the HAMP program.  Likewise with narrow exceptions that are not

pertinent here, the Dodd-Frank Act does not provide for a private right of action by

borrowers against lending institutions.  <u>See, e.g.</u>, <u>Regnante v. Sec. & Exch.</u>

<u>Officials</u>, No. 14 CIV. 4880 KPF, 2015 WL 5692174, at *7 (S.D.N.Y. Sept. 28,

2015); <u>Diena v. Certified Credit & Collection Bureau, Inc.</u>, No. 14 Civ. 769(AET),

2015 WL 570247, at *2 (D.N.J. Feb. 11, 2015) ("Plaintiff offers no statutory basis

for the existence of a private right of action under the Dodd–Frank Act[.]"));

<u>Levine v. Entrust Grp., Inc.</u>, No. 12 Civ. 3959(WHA), 2013 WL 1320498, at *7

(N.D.Cal. Apr. 1, 2013) ("Under the Dodd–Frank Act, the Court's research can find

no private right of action.")).  Therefore these breach of contract claims premised

upon HAMP or Dodd-Frank should also be dismissed.

## 2.   The Plaintiffs' Promissory Estoppel Claims Also Fail as a Matter of Law

These same considerations call for dismissal of the plaintiffs' promissory

estoppel claim set forth in Count IV of their complaint.  This promissory estoppel

claim, like the breach of contract claims, appears to be based upon two notions

which are unsupported by either the law or the well-pleaded facts:  the idea that

Wells Fargo agreed to refinance this loan, coupled with the legal premise that the

Anginos had an enforceable right to refinance under HAMP or some other federal

statute.  (Id., ¶¶110-113.)

Under Pennsylvania law promissory estoppel is appropriate in "situations

where the formal requirements of contract formation have not been satisfied and

where justice would be served by enforcing the promise."  Carlson v. Arnot-Ogden

Memorial Hosp., 918 F.2d 411, 416 (3d Cir. 1990).  Promissory estoppel allows the

court to enforce a promise that is unsupported by consideration where:  (1) the

promisor makes a promise that he reasonably expects to induce action or

forbearance by the promisee; (2) the promise does induce action or forbearance by

the promisee; and (3) injustice can only be avoided by enforcing the promise.

Carlson, 918 F.2d at 416.  However, in every instance a promise is an essential

element of a promissory estoppel claim. Moreover, in order to avoid a party's mere

hopes being transformed into a claim of promissory estoppel courts often require that pleadings and proof show the existence of "a clear and definite promise." Obado v. Magedson, 612 F. App'x 90, 94 (3d Cir. 2015)(construing New Jersey law). "Promissory estoppel is unavailable as a basis for relief when a promise is absent." Schleig v. Commc'ns Satellite Corp., 698 F. Supp. 1241, 1249 (M.D. Pa. 1988).

Here we find that the complaint simply fails to allege well-pleaded facts that would support a clear and definite promise by Wells Fargo to refinance this loan. This finding is fatal to this particular claim since promissory estoppel is unavailable where no promise can be found. Id. Therefore, Count IV of the complaint should also be dismissed.

**3**.    **The Anginos Have Failed to Properly Allege Common-Law Fraud or Violations Unfair and Deception Practices under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-1**

Furthermore, in its current form, the Anginos' complaint does not sufficiently allege either common-law fraud or a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-1.

With respect to the Anginos' common-law fraud allegations, beyond labeling the bank's conduct as fraudulent, the plaintiffs' complaint is devoid of any well-

pleaded factual allegations which would support these serious claims.  Thus, the

plaintiffs provide no description of the allegedly fraudulent representations which

they contend were made here by the bank.  Furthermore, the plaintiffs do not allege

any facts which would support an inference that the bank's decision to enforce its

contractual rights under these modified loan agreement constituted some form of

fraud upon the Anginos.

These deficiencies in the plaintiffs' complaint are particularly glaring since

the rules governing specificity of pleading fraud in federal court call for much

greater clarity in pleading and proof to sustain such grave allegations.  As the

United States Court of Appeals for the Third Circuit has observed:

> [A]llegations of fraud must comply with Federal Rule of Civil
> Procedure 9(b), which requires that allegations of fraud be pled with
> specificity.  In order to satisfy Rule 9(b), plaintiffs must plead with
> particularity "the 'circumstances' of the alleged fraud in order to place
> the defendants on  notice of the precise misconduct with which they
> are charged, and to safeguard defendants against spurious charges of
> immoral and fraudulent behavior.".  Plaintiffs may satisfy this
> requirement by pleading the "date, place or time" of the fraud, or
> through "alternative means of injecting precision and some measure of
> substantiation into their allegations of fraud." *Plaintiffs also must*
> *allege who made a misrepresentation to whom and the general*
> *content of the misrepresentation*.

Lum v. Bank of America, 361 F.3d 217, 223-4 (3d Cir. 2004)(citations omitted,

emphasis added).

Thus, "[p]ursuant to Rule 9(b), a plaintiff averring a claim in fraud must specify ' "the who, what, when, where, and how: the first paragraph of any newspaper story."' Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir.1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990)).  'Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."'  In re Rockefeller Ctr. Props. Secs. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (quoting In re Nice Sys., Ltd. Secs. Litig., 135 F.Supp.2d 551, 577 (D.N.J.2001), emphasis supplied)." Animal Science Products, Inc. v. China Nat. Metals & Minerals Import & Export Corp., 596 F.Supp.2d 842, 878 (D.N.J. 2008).

Here, when judged against the heightened pleading standards demanded by Rule 9, the Anginos' allegations of common law fraud are wholly deficient and consist of little more than the talismanic recital of the elements of a cause of action, something that will not do as a matter of pleading.  Therefore, this common law fraud claim should be dismissed.

The Anginos' closely related claims of deceptive conduct under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-1 (UTPCPL), Count III of the complaint, seem flawed in a similar fashion.

As to this count of the complaint, a review of the complaint suggests that, as drafted, the Anginos' claims against Wells Fargo appear to be premised upon §2011-2(4 )(xxi) of the UTPCPL, which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."  This statutory prohibition against "deceptive conduct does not require proof of the elements of common law fraud, but . . . knowledge of the falsity of one's statements or the misleading quality of one's conduct is still required."  Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 498 (3d Cir. 2013). "Therefore, in order '[t]o establish liability under the catch-all provision of the UTPCPL, "a plaintiff must present evidence showing:  (1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss."  Slapikas v. First Am. Title Ins. Co., CIV.A. 06–0084, ⸺ F.R.D. ⸺, ⸺, 2014 WL 899355, at *6 (W.D.Pa. Mar.7, 2014) (citing Seldon v. Home Loan Servs., 647 F.Supp.2d 451, 470 (E.D.Pa.2009); Hunt v. U.S. Tobacco Co., 538 F.3d 217, 223 (3d Cir.2008)).'  Prukala v. Elle, 3:14–CV–92, 2014 WL 1311125, *3 (M.D.Pa. Mar.28, 2014)."  Stephens v. State Farm Fire & Cas. Co., No. 1:14-CV-160, 2014 WL 5312682, at *9 (M.D. Pa. Oct. 16, 2014).

In this case, as it is currently pleaded, the plaintiffs' UTPCPL claim simply does not identify any affirmative deceptive acts by Wells Fargo upon which the plaintiffs justifiably relied to their financial detriment.  Instead, the gist of this state law claim appears to be the plaintiffs' assertion that Wells Fargo did not comply with the federal HAMP guidelines, thereby denying them an opportunity to modify this loan a fourth time.  While we find that these spare allegations are insufficient to meet the elements of a claim under the UTPCPL, we note that other courts have sustained such claims in cases where there have been affirmatively misleading representations made to borrowers by lenders which went beyond mere technical non-compliance with HAMP regulations.  See Wilson v. Bank of Am., N.A., 48 F. Supp. 3d 787 (E.D. Pa. 2014).

While the plaintiffs suggest in their opposition to this motion that they may be able to allege such facts, the difficulty with these belated assertions is that they are not set forth in the complaint and run afoul of the well-settled principle that a plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion.  Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d

1101, 1107 (7th Cir. 1984)); cf. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)."). Yet, while we cannot rely upon these averments set forth in the Anginos' brief in assessing the sufficiency of this specific allegation, the plaintiffs' suggestion that they may be able to allege further well-pleaded facts in support of this particular claim cautions that this count of the complaint should be dismissed without prejudice to the plaintiffs attempting to allege facts which satisfy the elements of a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-1.

### 4. **The Anginos May Not Maintain Their Currently Pleaded Claim Against Wells Fargo Bank Under the Fair Credit Reporting Act**

Likewise the Anginos may not maintain a claim against Wells Fargo under the federal Fair Credit Reporting Act, 15 U.S.C. §1681 (FCRA), as it is currently pleaded in Count VI of their complaint. These alleged FCRA violations appear to relate to the bank's factually accurate reports that the Anginos had defaulted on their loan. (Doc. 1, ¶¶ 131-136.)

This claim fails for two basic reasons.  First, we are constrained to note that this Fair Credit Reporting Act claim actually makes no reference to the Fair Credit Report Act at all, but rather alludes to an entirely unrelated statute, the  Real Estate Settlement Procedures Act, ("RESPA"), 12 U.S.C. §2605, *et seq*. [3]

Yet, while the Anginos' complaint does not cite any provision of the  FCRA they may be relying upon in making these allegations, and in fact cites an unrelated statute, the only provisions of the Act that could arguably apply to the reporting of adverse financial information are found in §1681 s-2 of the Act. Under § 1681 s-2(a)(1)(A).  However, there is no private right of action for reporting inaccurate information to the credit agencies; instead only the government can pursue such claims.  See Noel v. First Premier Bank, 2012 WL 832992, at *5 (M.D.Pa. Mar. 12, 2012) (citing Simms Parris v. Countryside Fin. Corp., 652 F.3d 355, 358 (3d Cir. 2011)).  Further, as a furnisher of information to credit reporting agencies, Wells Fargo can only be liable to private parties under 15 U.S.C. § 1681s-2(b) if the following conditions are met:  (1) notice was sent by the consumer of disputed information to a consumer reporting agency, (2) the consumer reporting agency notified the furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information.  Jaramillo v. Experian Information Solutions,

---

[3]We separately discuss the plaintiffs' RESPA claim below.

<u>Inc</u>., 155 F.Supp. 2d 356, 362-63 (E.D.Pa. May 21, 2001); <u>Slimm v. Bank of</u>
<u>America Corp.</u>, 2013 WL 1867035 at*9 (D.N.J. May 2, 2013).

The Anginos do not allege that any of these conditions have been met, and in
fact do not even allege a violation of the FCRA.  Therefore, in the absence of any
legal or factual justification for this claim, Count IV of the complaint, which
alleged FCRA violations, should also be dismissed.

### 5.   <u>The Plaintiffs' Various Common Law Tort Claims Fail to State a Claim Upon Which Relief May Be Granted</u>

In Count VII of their complaint the plaintiffs combine and conflate a number
of common law tort claims, accusing the bank of conspiracy, negligence and the
intentional or negligent infliction of emotional distress.  (<u>Id</u>.,¶¶137-143.)  These
claims are set forth in a serial and summary fashion by the Anginos, and as pleaded
fail for  at least three reasons.

First, fairly construed, with respect to these tort claims, in order to state a
valid cause of action plaintiffs must provide some factual grounds for relief which
"requires more than labels and conclusions, and a formulaic recitation of the
elements of a cause of actions will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550
U.S. 544, 555 (2007)  <u>Id</u>. at 555.  Instead, "[f]actual allegations must be enough to

raise a right to relief above the speculative level." Id.  Fairly construed, as to these

tort claims, the Anginos' pleadings amount to little more than a formulaic recitation

of the elements of a cause of action, a form of pleading that will not do.  Therefore,

these claims, which are inadequately pleaded, fail as a matter of law and should be

dismissed.

Second, the Anginos' civil conspiracy claim, which is also pleaded in a

conclusory fashion without supporting factual detail, simply fails to state a claim

upon which relief may be granted.  In this regard, as we have previously noted:

[I]n order to plead a civil . . .  action based upon a claim of conspiracy,
a plaintiff must plead allegations that are:

> supported by facts bearing out the existence of the
> conspiracy and indicating its broad objectives and the role
> each defendant allegedly played in carrying out those
> objectives.  Bare conclusory allegations of "conspiracy"
> or "concerted action" will not suffice to allege a
> conspiracy. The plaintiff must expressly allege an
> agreement or make averments of communication,
> consultation, cooperation, or command  from which such
> an agreement can be inferred.

Flanagan v. Shively, 783 F.Supp. 922, 928 (M.D.Pa.1992).
Furthermore, when pleading a conspiracy claim, a plaintiff cannot rely
upon subjective suspicion and speculation.  Young v. Kann, 926 F.2d
1396, 1405 n. 16 (3d Cir.1991).  Quite the contrary, "to properly plead
an unconstitutional conspiracy, a plaintiff must assert facts from which
a conspiratorial agreement can be inferred.  D.R. v. Middle Bucks
Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir.1992); see

also Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir.2008)
(stating that a conspiracy requires a 'meeting of the minds') (further
citation omitted).  This holding remains good law following Twombly
and Iqbal, which, in the conspiracy context, require 'enough factual
matter (taken as true) to suggest that an agreement was made,' in other
words, 'plausible grounds to infer an agreement.'  Twombly, 550 U.S.
at 556, 127 S.Ct. 1955, 167 L.Ed.2d 929."  Great W. Mining &
Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir.2010)
cert. denied, —— U.S. ——, 131 S.Ct. 1798, 179 L.Ed.2d 655
(U.S.2011).  We are mindful of these pleading requirements, which are
considered together with the standards of pleading applicable to all
civil actions in federal court as defined in Twombly and Iqbal, supra.

Victor v. Huber, No. 3:12-CV-282, 2012 WL 7463723, at *14 (M.D. Pa. Nov. 29,

2012) report and recommendation adopted sub nom. Victor v. Hubbard, No. 3:12-

CV-00282, 2013 WL 704654 (M.D. Pa. Feb. 26, 2013).  Here the Anginos' civil

conspiracy allegations meet none of these requisites for a valid cause of action.

Given that:  "[b]are conclusory allegations of 'conspiracy' or 'concerted action'

will not suffice to allege a conspiracy [and] [t]he plaintiff must expressly allege an

agreement or make averments of communication, consultation, cooperation, or

command from which such an agreement can be inferred," Flanagan v. Shively,

783 F.Supp. 922, 928 (M.D.Pa.1992), this claim also fails as pleaded by the

plaintiffs since we do not know who the alleged conspirators are, what the object of

their agreement was, and what concerted actions they are alleged to have taken as

part of this corrupt agreement.

Third, with respect to claims for intentional or negligent infliction of emotional distress, under Pennsylvania law, "courts have been chary to allow recovery for a claim of intentional infliction of emotional distress.  Only if conduct which is extreme or clearly outrageous is established will a claim be proven."  Hoy v. Angelone, 720 A.2d 745, 753-54 (Pa. 1998).  Indeed, the Restatement (Second) of Torts instructs that "[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort."  Restatement (Second) of Torts § 46, comment d; Hoy, 720 A.2d at 754.  In keeping with these restrictive standards, the Pennsylvania Supreme Court has provided examples of conduct found to state a claim for intentional infliction of emotional distress, and such examples demonstrate the extraordinary nature of the theory:

> Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct.  See e.g., Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118 (1970)(defendant, after  striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents (recognizing but not adopting section 46)); Banyas v. Lower Bucks Hospital, 293 Pa.Super. 122, 437 A.2d 1236 (1981)(defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); Chuy v. Philadelphia Eagles Football

Club, 595 F.2d 1265 (3d. Cir.1979)(defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

Hoy,720 A.2d at 754.

Thus, in order to sustain a claim of intentional infliction of emotional distress, Pennsylvania law requires that a plaintiff plead that: "(1) the conduct was extreme and outrageous; (2) the conduct was intentional; (3) the conduct caused emotional distress; and (4) the distress was severe.  Silver v. Mendel, 894 F.2d 598, 606 n. 16 (3d Cir.1990).  Ultimately, in order to prevail on a claim for intentional infliction of emotional distress, a plaintiff must show that a defendant's conduct exceeded the bounds of decency and is intolerable under prevailing societal norms. Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa.Super.Ct.2005); see also Cox v. Keystone Carbon Co., 861 F.2d 390 (3d Cir.1988)."  Kearney v. JPC Equestrian, Inc., No. 3:11-CV-01419, 2012 WL 1020276, at *7 (M.D. Pa. Jan. 4, 2012) report and recommendation adopted, No. 3:11-CV-01419, 2012 WL 1020266 (M.D. Pa. Mar. 26, 2012).  Applying this exacting standard, courts generally agree that a bank efforts to enforce its contractual rights  simply does not constitute intolerable or outrageous conduct.  See, e.g.,  DeHart v. HomEq Servicing Corp., 47 F. Supp. 3d 246, 257 (E.D. Pa. 2014); Messer v. First Fin. Fed. Credit Union of Maryland, No. CIV.A. 11-4144, 2012 WL 3104604, at *4 (E.D. Pa. July 30, 2012); Wilson v. Am.

-37-

Gen. Fin. Inc., 807 F. Supp. 2d 291 (W.D. Pa. 2011); Brown v. Udren Law Offices

PC, No. CIV.A. 11-2697, 2011 WL 4011411, at *4 (E.D. Pa. Sept. 9, 2011).  In our

view, this is what happened in the instant case.  The Anginos defaulted on their

loans, and Wells Fargo has attempted to hold them to the terms of their mortgage.

As a matter of law, the exercise of these legal and contractual rights cannot rise to

the level of intolerable or outrageous conduct which exceeds the bounds of

decency.  Therefore, this claim for intentional infliction of emotional distress

should also be dismissed.

Likewise, claims like those made here for negligent infliction of emotional

distress arising out of a bank's handling of a delinquent mortgage are often

dismissed by courts, particularly when those claims are set forth in a conclusory

manner like the allegations made by the plaintiffs here.  Francis v. TD Bank, N.A.,

No. CIV. 12-7753 RBK/AMD, 2013 WL 4675398, at *6 (D.N.J. Aug. 30, 2013)

aff'd, 597 F. App'x 58 (3d Cir. 2014) and aff'd, 597 F. App'x 58 (3d Cir. 2014);

Clay v. Option One Mortgage Corp., No. CIV. A. 07-1327, 2007 WL 2728972, at

*5 (E.D. Pa. Sept. 18, 2007). Rather, as a general rule:

> To establish a claim of negligent infliction of emotional distress under
> Pennsylvania law, a plaintiff must prove that:  (1) he or she was near
> the scene of an accident or negligent act; (2) shock or distress resulted
> from a direct emotional impact caused by the sensory or
> contemporaneous observance of the accident, as opposed to learning

of the accident from others after its occurrence; and (3) he or she is closely related to the injured victim.  Smith v. School Dist. of Philadelphia, 112 F.Supp.2d 417, 428 (E.D.Pa.2000) (citing Sinn v. Burd, 486 Pa. 146, 170-71, 404 A.2d 672, 685 (1979); Frempong-Atuahene v. Redevelopment Auth. of Phila., 1999 WL 167726, *7 (E.D.Pa.1999)).  Manifestation of physical injury is necessary to sustain a claim for negligent infliction of emotional distress.  See Redland Soccer Club, Inc. v. Department of the Army of the United States, 55 F.3d 827, 848 (3d Cir.1995); Smith 112 F.Supp.2d at 428-29; Sonlin v. Abington Memorial Hospital, 2000 Pa.Super. 44, 748 A.2d 213, 217 (Pa.Super.2000); Armstrong v. Paoli Memorial Hospital, 430 Pa.Super. 36, 44-45, 633 A.2d 605, 609 (Pa.Super.1993) (stating that "[t]emporary fright, nervous shock, nausea, grief, rage, and humiliation if transitory are not compensable injuries; but, long continued nausea or headaches, repeated hysterical attacks or mental aberration are compensable injuries").

Robinson v. May Dep't Stores Co., 246 F. Supp. 2d 440, 444-45 (E.D. Pa. 2003).

Here, nothing in the spare language of the tort claim set forth in Count VII of the Anginos' complaint recites well-pleaded facts which meet the elements of a negligent infliction of emotional distress under Pennsylvania law.  Therefore, this claim also fails as a matter of law.

**6.      The Anginos' RESPA Claim Should Not Be Dismissed But The Plaintiffs' Should Be Required to File a More Definite Statement of This Claim**

Finally, in Count V of the complaint, the Anginos endeavor to bring claims charging alleged violations of the Real Estate Settlement Procedures Act, ("RESPA"), 12 U.S.C. §2605, *et seq*.  Specifically, the Anginos seem to allege that

the defendants failed to respond to the plaintiff's "Qualified Written Requests" for information on their loan and failed to correct erroneous loan information.  (Id., ¶¶114-130.)  Wells Fargo has moved to dismiss this Count of the complaint, arguing that a qualified written request is a term of art under the law, and asserting that  the Angino have not adequately described the communications which they allegedly sent to the bank and which they allege constituted qualified written requests under RESPA.

RESPA is a federal consumer protection statute applicable to mortgage lenders. In part, RESPA requires lenders to refrain from collecting unearned closing fees and kickbacks; compels lenders to disclose to borrowers the fact that servicing on their loans may be transferred; and requires loan servicers to respond in a timely fashion to "Qualified Written Requests" from borrowers seeking information regarding the status of home loans.  12 U.S.C. §§2605, 2607.  In his regard, RESPA simply requires that, upon receipt of a Qualified Written Request, a loan servicer must "provide the borrower with a written explanation..." 12 U.S.C. §2605(e)(2)(B).  In this case the gist of the Anginos' RESPA claim relates to an alleged failure by Wells Fargo to respond to qualified written requests for information, and Wells Fargo contests this claim by arguing that the plaintiffs have

not identified a proper written request under the statute. A "Qualified Written

request" under RESPA is defined as:

> [A] written correspondence, other than notice on a payment coupon or
> other payment medium supplied by the servicer, that-
>
> (i) includes, or otherwise enables the servicer to identify, the name and
> account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower,
> to the extent applicable, that the account is in error or provides
> sufficient detail to the servicer regarding other information sought by
> the borrower. 12 U.S.C. § 2605(e)(1)(B).

Jones v. ABN AMRO Mortg. Group, Inc., 551 F.Supp.2d 400, 411 (E.D.Pa.2008).

Because the term, "Qualified Written Request," has a specific meaning under RESPA

plaintiffs alleging a violation of this particular provision of the statute must plead

with specificity facts which show that they submitted a proper "Qualified Written

Request" to the defendants in order to state a claim under §2605.  Thus, where

"plaintiffs do not specifically allege that they sent any written correspondence to

any defendant *or that any correspondence met the requirements of a RESPA*

[Qualified Written Request][their claims will be dismissed]."  Jones v. ABN

AMRO Mortg. Group, Inc. 551 F.Supp.2d 400, 411 (E.D.Pa.,2008)(emphasis

added) citing Scocca v. Cendant Mortg. Corp., 2004 WL 2536837 at *3 (E.D.Pa.

Nov. 9, 2004) (dismissing a RESPA QWR claim in part because "[i]n his amended

complaint, plaintiff never claims that he sent defendant a qualified written

request...."); Parker v. Long Beach Mortgage Co., 2006 WL 2868983 at *3

(E.D.Pa. Oct. 3, 2006) ("The complaint does not allege that Plaintiffs ever sent [a

QWR] to either HSBC or OCWEN.")

In this case, the Anginos' description of their communications with Wells

Fargo is couched in the language of RESPA as a qualified written request, but

provides few details concerning the precise nature of those written requests.  This

lack of factual detail makes a complete assessment of this particular claim difficult.

Presented with these obstacles to an informed understanding of the plaintiffs'

remaining claims, we note that, when a plaintiff's complaint is unclear, the court

may, *sua sponte,* order the plaintiffs to file a more definite statement pursuant to

Rule 12(e) of the Federal Rules of Civil Procedure in order to clarify the plaintiffs'

claims.  See, e.g., Kyeame v. Buchheit, No. 1:07-CV-1239, 2011 WL 3651369, at

*1 (M.D. Pa. Aug. 18, 2011); MFS, Inc. v. Twp. of South Annville, No.

1:05–CV–1371, 2006 WL 3254535, at *7 (M.D.Pa. Nov.9, 2006); see also Moore's

Federal Practice, § 12.36 (Matthew Bender 3d ed.) ("Because of its potential

usefulness ... courts will occasionally order a more definite statement *sua sponte,*

which they have the freedom to do"); Fikes v. City of Daphne, 79 F.3d 1079,

1082–83 (11th Cir.1996) (finding that a more definite statement can tighten a

complaint and clarify which of several possible claims are being asserted).

Here, we find that this particular complaint aptly:

> highlight[s] the particular usefulness of the Rule 12(e) motion for a
> more definite statement. . . .  When a complaint fashioned under a
> notice pleading standard does not disclose the facts underlying a
> plaintiff's claim for relief, the defendant cannot reasonably be
> expected to frame a proper, fact-specific . . . defense. . . .  The Rule
> 12(e) motion for a more definite statement is perhaps the best
> procedural tool available to the defendant to obtain the factual basis
> underlying a plaintiff's claim for relief.

Thomas v. Independence Tp., 463 F.3d 285, 301 (3d Cir. 2006).

Accordingly, as to this RESPA claim we recommend that the defendants'

motion to dismiss be denied, without prejudice, but that the plaintiffs be directed to

file a more definite statement of their claim pursuant to Rule 12(e), which provides

more specific factual details on the nature of the communications which they

described as qualified written requests under RESPA.

## III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the

defendants' motion to dismiss the complaint. (Doc. 6.) be GRANTED in part, and

DENIED, in part, as follows:  we recommend dismissal of Counts I, II, III, IV, VI,

and VII of the complaint, although some counts, and particularly Count III which

alleges a violation of Pennsylvania's Unfair Trade Practices and Consumer

Protection law, 73 Pa.C.S. §201-1 should be dismissed without prejudice to the

filing of an amended complaint stating well-pleaded facts in support of this claim.

As for Count V of the complaint, which bring claims charging alleged violations of

the Real Estate Settlement Procedures Act, ("RESPA"), 12 U.S.C. §2605, *et seq.,* it

is recommended that the motion to dismiss be denied, but that the plaintiffs be

directed to file a more definite statement of their claims pursuant to Rule 12(e) of

the Federal Rules of Civil Procedure.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within
fourteen (14) days after being served with a copy thereof.  Such party
shall file with the clerk of court, and serve on the magistrate judge and
all parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a de novo determination of those portions of the report or
specified proposed findings or recommendations to which objection is
made and may accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge.  The
judge, however, need conduct a new hearing only in his or her
discretion or where required by law, and may consider the record
developed before the magistrate judge, making his or her own
determination on the basis of that record.  The judge may also receive
further evidence, recall witnesses or recommit the matter to the
magistrate judge with instructions.

Submitted this 19th day of February 2016.

***<u>S/Martin C.  Carlson</u>***
Martin C. Carlson
United States Magistrate Judge